(Nos. 25407, 25434.—

THE PEOPLE *ex rel.* P. W. PETERSEN *et al.* Petitioners *vs.* EDWARD J. HUGHES, Secretary of State, Defendant.— THE PEOPLE *ex rel.* Adelman Heating Corp. *et al.* Petitioners, *vs.* EDWARD J. HUGHES, Secretary of State *et al.* Defendants.

*Opinion filed December 15, 1939—Rehearing denied Feb. 13, 1940.*

Stone, J., dissenting.

George E. Drach, and Lowell D. Ryan, for petitioners P. W. Petersen *et al.;* David & Fainman, (Sigmund W. David, and James J. Glassner, of counsel,) for petitioners the Adelman Heating Corp. *et al.*

John E. Cassidy, Attorney General, (Montgomery S. Winning, of counsel,) for defendants.

Mr. Justice Murphy delivered the opinion of the court:

In cause No. 25407 leave was granted by this court to file an original petition for a writ of *mandamus* against the

Secretary of State to require him to certify and publish, as a duly enacted law, House Bill No. 537 passed by the Sixty-first General Assembly. Similar leave was granted on the original petition in cause No. 25434, which refers to Senate Bill No. 500. The Secretary of State, in answering each petition, alleged the passage, enrollment and signing of each bill, the date of presentment to the Governor, the fact that each bill was vetoed by the Governor and the dates the respective bills and veto messages were filed in his office. Petitioners filed a motion to strike the answers, contending that, because the bills and veto messages were not filed in the office of the Secretary of State within ten days after adjournment of the General Assembly, each bill became a law notwithstanding the Governor's veto. The two causes were consolidated for oral argument and opinion. The questions presented require a construction of parts of section 16 of article 5, the veto section, of the constitution.

By the admitted facts, both bills were passed by the General Assembly June 30, 1939, and, thereafter, on the same day by joint resolution, it adjourned, *sine die.* House Bill No. 537 was enrolled July 1, duly signed by the president of the Senate and speaker of the House of Representatives and presented to the Governor July 17. The Governor filed the bill with his veto message in the office of the Secretary of State July 26. Senate Bill No. 500 was duly signed by the same officers, presented to the Governor July 11 and filed by him, with his veto message, in the office of the Secretary of State, July 20.

The applicable provisions of section 16 of article 5 are: "Every bill passed by the General Assembly shall, before it becomes a law, be presented to the Governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it, with his objections, to the house in which it shall have originated,"

etc. * * * "Any bill which shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it; unless the General Assembly shall, by their adjournment, prevent its return, in which case it shall be filed with his objections in the office of the Secretary of State, within ten days after such adjournment, or become a law."

. Early in the session the General Assembly adopted joint rules, pertaining to the procedure to be followed in passing, examining, recording bills in the two Houses and presenting the same to the Governor. By these it was provided that a bill passed by both Houses should be transcribed and typewritten, and then examined and compared by a joint committee of the two Houses. Discrepancies between the wording of the transcribed bill and the one engrossed were to be reported, by the committee, to each House. The secretary of the Senate or clerk of the House, as the case might be, was required to certify, on the margin of the roll, the House in which the bill originated. After such examination and report, the bill must be signed by the speaker of the House and president of the Senate, and presented to the Governor by the joint committee. The committee was required to report to each House the day of presentment, which was to be entered on the journals of each House. House joint resolution No. 21, pars. 6, 7, 8, 9; Laws of 1939, p. 1224.

The question presented in these causes arises on bills vetoed by the Governor and which, by reason of the adjournment of the General Assembly, he was prevented from returning to the House of origin. The latter part of the last sentence of section 16 of article 5 of the constitution, definitely fixes the office of the Secretary of State as the place where the Governor shall file such vetoed bills, but the controversy, here, is as to the time of filing.

Petitioners ask for this construction: Any bill vetoed by the Governor after the *sine die* adjournment of the General Assembly must be filed in the office of the Secretary of State within ten days after the adjournment and if not filed within that time it becomes a law. Defendants reply that if such construction be adopted, then all bills must be presented to the Governor before the adjournment of the legislature to preserve his full ten-day period in which to consider each bill. For an alternative construction the defendants offer this: The Governor has ten days in which to examine a bill and exercise his veto power; that such ten-day period is to be computed from the date of presentment, and presentment may be made after the adjournment of the General Assembly.

Petitioners recognize the mandatory character of that part of section 16, *supra,* which gives the Governor the power to approve or veto a bill and limits him to ten days from the time of presentment in which to exercise the power of approval or veto and file his veto message. They contend that the Governor, when engaged in the examination of bills, is performing a legislative function, clothed with power in legislative matters, and while so engaged in the exercise of such power he is a part of the General Assembly and, after that body adjourns *sine die* his duty continues; that he must, they say, determine what bills have passed both Houses and obtain possession of them for examination.

Article 3 of the constitution divides the powers of government into three distinctive departments,—legislative, executive and judicial. It ordains that no person, being one of these departments, shall exercise any power properly belonging to either of the others except as expressly directed or permitted in the constitution. The veto power conferred upon the Governor under section 16 of article 5 of the constitution is one of the express exceptions provided

for in article 3. In the exercise of his constitutional power to approve or disapprove legislative enactments he is limited to the express authority granted. In *Fergus* v. *Russel,* 270 Ill. 304, at page 349, this court said that the Governor, when engaged in considering bills; was, in a sense, acting in a legislative capacity and for that purpose was a part of the legislative department of the State, but that he performed a qualified and destructive legislative function and not a creative one. The first sentence of section 16, *supra,* is a mandate directing that all bills passed shall, before they become a law, be presented to the Governor. (*People* v. *Lueders,* 283 Ill. 287.) The plain import of the words "be presented to the governor" means the bills shall be delivered to the Governor. It is manifest the General Assembly understood the duty rested upon it to present enacted bills to the Governor for, by paragraph 9 of House joint resolution No. 21, provision is made for presentment by a joint committee. The constitution imposes the duty upon the legislative department to create and enact legislation, and the presentment of bills to the Governor for his approval is one of the necessary steps in the exercise of the legislative function. The duty of the Governor does not begin until the bill has been presented to him by the General Assembly. *Hamilton* v. *State,* 61 Md. 14.

The purpose of granting the Chief Executive authority to approve or disapprove legislative matters was to enable him to prevent, as far as possible, the evils that flow from hasty and ill-considered legislation. The provision was one of the constitutional checks and balances exercised by one department of government over the other. It is a basic part of our scheme of government and is jealously guarded by the courts. As bearing on the question of preventing hasty and ill-considered legislation, this court, in construing a similar provision in the constitution of 1848,

in *People* v. *Hatch,* 33 Ill. 9, at page 136, said: "As the best means of accomplishing this and of preventing the adoption of injurious measures, they [the framers of the constitution] gave to the Governor ten days, exclusive of Sundays, in which to bestow that careful examination and consideration, so essentially necessary to determine the effects and consequences likely to flow from the adoption of a new measure. This is the duty imposed, and it is one that must be performed. And the time allowed for the purpose cannot be abridged, or the provision thwarted, by either accident or design. The use of the whole time given to the Governor must be allowed." In the *Pocket Veto case,* 279 U. S. 655, 49 Sup. Ct. 463, 73 L. ed. 894, the court, in considering the power of the veto on acts of Congress said: "The power thus conferred upon the President can not be narrowed or cut down by Congress, nor the time in which it is to be exercised, lessened, directly or indirectly."

In *Edwards* v. *United States,* 286 U. S. 482, 52 Sup. Ct. 627, the court, in considering the constitutional provision vesting veto power in the President and in determining his authority to approve a bill after adjournment of Congress *sine die* said: "Regard must be had to the fundamental purpose of the constitutional provision to provide appropriate opportunity for the President to consider the bills presented to him."

The constitutional provision does not prescribe which day, within the ten-day period, the Governor shall exercise the power of veto. If he approves, he shall sign the bill and it becomes a law. If he disapproves, and the General Assembly is in session, he must return the bill to the House in which it originated within ten days from date of presentment or it becomes a law. The other provision is: If the adjournment of the General Assembly prevents the return of a bill to the House in which it originated, then the Governor must file it, with his veto message, in the office of

the Secretary of State within ten days from the date of adjournment. There are two events from which the respective ten-day periods for filing begin to run; the date of presentment and the date of adjournment. The consequences which flow from a failure of the Governor to file a vetoed bill within the ten-day period, following either presentment or adjournment, are the same. In each instance the bill becomes a law. In a consideration of the provisions fixing a ten-day period, one following the date of presentment, the other of adjournment, we may, as regards the matter of presentment of bills, consider them as falling within four classes: First, those presented more than ten days before adjournment; second, those presented on date of adjournment; third, those presented less than ten days before adjournment, but which the Governor had not returned to the House in which they originated at the time of adjournment, and, fourth, those presented after adjournment.

In the first class, the ten-day period for the return of the vetoed bill following presentment, expires before the date of adjournment and it must be returned to the House in which it originated and is in no way affected by the adjournment. In the second class, the date of presentment and adjournment are the same and each ten-day period begins to run at the same time. As to the vetoed bills falling in the third class, there are two possible theories of construction: (a) To allow the full ten-day period following adjournment and add to it that part of the period following presentment which had run before the General Assembly adjourned; (b) to allow only a ten-day period following the date of presentment. If the former interpretation is adopted, the time for the Governor to return a vetoed measure of the third class would be extended beyond ten days, with a possible maximum of nineteen days. For many years it has been considered that all

vetoed measures must be filed by the Governor within ten days following presentment or they become a law, and the various Chief Executives of the State government have followed that practice for all vetoed bills within the third class. While such practice is not conclusive of that interpretation of the constitutional provision, it should be given great weight in arriving at a proper construction of a provision of this character. (*Pocket Veto case, supra; People* v. *Barrett,* 370 Ill. 464; *Neiberger* v. *McCullough,* 253 id. 312.) In the fourth class, there arises the preliminary question whether the General Assembly possesses the power to cause presentment to be made after *sine die* adjournment. We are not concerned as to the method of presentment or the authority of the agency by which presentment was made, for the fact of presentment is admitted by the pleadings. The agency by which it was accomplished is presumed to have been regular and authorized. It is solely a question of power.

The State constitution is not a grant of powers to the legislature, but, on the contrary, it is a limitation thereon. The legislature possesses every power not delegated to some other department or to the Federal government or not denied to it by the constitution of the State or of the United States. *Greenfield* v. *Russel,* 292 Ill. 392; *People* v. *Thompson,* 155 id. 451; *Harris* v. *Board of Supervisors,* 105 id. 445.

Presentment of a bill to the Governor being a legislative function, the question whether the General Assembly has the power to authorize such presentment after an adjournment *sine die* is narrowed to the inquiry, Is there a constitutional inhibition against it? The constitution contains no provision respecting the time within which the General Assembly shall present enacted bills to the Governor. Subject to certain constitutional provisions, the legislature has the power to provide that a bill, when duly enacted, shall operate retrospectively or that it may be-

come effective at some future date. Within the outline of the powers to initiate and enact legislation and to fix the dates when it shall become effective, there is also the power to determine when a bill shall be presented to the Governor. The power of the General Assembly to authorize the presentment of a bill to the Governor after it has adjourned *sine die,* is inferior to the constitutional provision which places upon the Governor the duty to examine all bills, and which grants him ten days for consideration thereof in which to approve or disapprove.

It is common knowledge that, for many years, the General Assembly has followed the practice of passing many bills in the closing hours of the session. It appears from the answer of respondents, that the Sixty-first General Assembly passed a total of 474 bills, 232 of which were passed the last day of the session. From practical considerations, it is apparent that the General Assembly should have some time after the *sine die* adjournment for the proper preparation of the bills for presentment to the Governor. Such considerations could not justify the violation of an unambiguous constitutional requirement, but, as in this case, where there is no constitutional objection against such presentment, the practice followed by the General Assembly should be given great weight.

The constitutional authority of the President to sign a bill after a *sine die* adjournment of Congress was sustained in *Edwards* v. *United States, supra.* The same question, as to the authority of the Governor, has been presented to the courts of some of the States where the constitutional provision was similar to the Federal constitution and to our constitution. The weight of authority is that the Governor possesses such power. (*People* v. *Bowen,* 21 N. Y. 517; *Seven Hickory* v. *Ellery,* 103 U. S. 423, 26 L. ed. 435; *Landford* v. *County Comrs.* 73 Md. 105, 20 Atl. 1017; *Johnson* v. *Luers,* 129 id. 521, 99 Atl. 710; *Dow* v. *Beidleman,* 49 Ark. 325, 5 S. W. 297; *State* v. *McCook,*

109 Conn. 621, 147 Atl. 126, 64 A. L. R. 1453; *Hartness v. Black,* 95 Vt. 190, 114 Atl. 44; *Solomon v. Cartersville Comrs.* 41 Ga. 517.) The question, here, arises on the filing of the bill which was vetoed after a *sine die* adjournment, but upon the question of authority of the Governor to exercise the veto power after adjournment there cannot be a question, for authority to approve after the adjournment of the General Assembly would include authority to disapprove. The wording of the last part of the constitutional provision which directs the Governor to file vetoed bills in the office of the Secretary of State after the adjournment gives force to this construction.

The constitutional provision granting the Governor ten days within which to approve or disapprove a bill and file the same if vetoed, must, as to all bills coming in the fourth class, be the ten days following presentment. It was stated, in reference to the third class, that the provision for filing in the office of the Secretary of State within ten days after adjournment did not serve to lengthen the time for the Governor's approval or disapproval beyond the ten-day period from presentment. The converse of that is true. It can not be given an interpretation which will impair, or abridge, the time within which the Governor may exercise his veto power. If the provision in reference to filing in the office of the Secretary of State within ten days after adjournment was to control, then we are forced to the adoption of one of two impossible constructions. One would impair the legislative power to fix the time of presentment, the other would lessen the period of time for the Governor's consideration of the matter, and, in House Bill No. 537, remove it entirely.

It is alleged in the answers that of the 474 bills passed by the Sixty-first General Assembly only 165 were presented to the Governor before it adjourned *sine die.* Of the 309 bills presented to the Governor after June 30, 43

were presented on July 12, which was the tenth day following adjournment, Sundays excepted, and 161 bills were presented more than ten days after adjournment, Sundays excepted. With such a vast number of bills presented to the Governor for his consideration, it is apparent that practical necessity requires that he be given time for his examination. Any construction which reduces the ten-day period belonging to the Governor or imposes a duty upon the General Assembly to present all bills before the date of adjournment, would lead to the defeat of the benefits which the constitutional provision was intended to guarantee. In *Edwards* v. *United States, supra,* the court, speaking through Mr. Chief Justice Hughes, said, "No public interest would be conserved by the requirement of hurried and inconsiderate examination of bills in the closing hours of a session, with the result that bills may be approved which on further consideration would be disapproved or may fail although on such examinations they might be found to deserve approval."

Petitioners cite *People* v. *Rose,* 167 Ill. 147, in support of their contentions. The question before the court in these cases was not before the court in the *Rose case.* The question there considered was as to computation of time.

The Governor's veto of House Bill No. 537 and Senate Bill No. 500 must be given effect, and the Secretary of State was right in not certifying either of them as duly enacted laws.

The judgment in each case is that the writ of *mandamus* be denied.

*Writs denied.*

Mr. JUSTICE STONE, dissenting.