**UNITED STATES**
**v.**
**KAPSALIS et al.**
**Nos. 11050, 11051.**

United States Court of Appeals, Seventh Circuit.

July 8, 1954.

---

678

Kenneth J. Burns, Jr., Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., Charles Kralovec, James P. Piragine, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The principal question presented by these two appeals is the same. Both appeals are from judgments of the District Court denying, without a hearing, the motions of the defendants to vacate the sentences which had been imposed on each of the defendants as a result of their having pleaded guilty to certain indictments charging violations of the federal narcotics laws.

In 1951 the traffic in narcotics had reached such alarming proportions in the United States that Congress passed a concurrent resolution, H. R. 3490, "to make more stringent and uniform the penalties to be imposed upon persons violating" these laws. The Senate Committee Report on this resolution stated that "more severe sentences would enable narcotic violators, who are frequently addicts themselves, to be subjected to a longer period of treatment and observation, and would at the same time have the important effect of removing from active participation in the drug traffic those offenders who may not be susceptible to corrective treatment." See U. S. Code and Congressional and Administrative Service, Vol. 2, 1951, page 2602. Pursuant to the recommendations of the Committees of the House and of the Senate, the Congress amended the Narcotic Drugs Import and Export Act, 21 U.S. C.A. § 174, and the Internal Revenue Laws, Harrison Narcotics Act, 26 U.S. C.A. § 2557(b) (1), to provide that persons violating these laws should be subject to mandatory minimum sentences, to longer sentences for second and subsequent convictions and to preclude the suspension of sentences and probation for such repeaters.

In October of 1952 the defendant Andrew Kapsalis was charged in three indictments, containing two, nine and four counts, respectively, with violations of the Harrison Narcotics Act, 26 U.S.C.A. §§ 2553(a) and 2554(a), the Narcotic Drugs Import and Export Act, 21 U.S. C.A. § 174, and the General Conspiracy Act, 18 U.S.C.A. § 371. The court, after first determining by questioning the defendant and his attorney that the defendant's attorney had advised the defendant as to his rights, as to the nature of the offenses and as to the possible penalties, accepted the pleas of guilty, adjudged the defendant guilty and sentenced him to ten years imprisonment on each indictment, the sentences to run concurrently for a total of ten years.

The defendant Kapsalis now contends that the District Court was influenced to sentence him for a longer term on each indictment because of the mandatory minimum penalties "purportedly" established by the 1951 amendments of the narcotics law and that the amended law, H. R. 3490, commonly known as the Boggs Act, 26 U.S.C.A. § 2557(b) (1), under which the defendant was sentenced was invalid; that it never became a law because the resolution after being passed by the Congress was neither "presented to the President nor approved by the President as required by Article I, Section 7, Clause 2 of the Constitution." Kapsalis therefore contends that the District Court erred in dismissing the motion to vacate his sentence.

The Boggs Act was passed by the Senate, the House having theretofore passed it, on Saturday, October 20, 1951. Later on that same day the first session of the 82nd Congress adjourned *sine die*. The President of the Senate and the Speaker of the House examined and attested the resolution after adjournment pursuant to a concurrent resolution passed by the two branches on the same day prior to the adjournment. On the following Monday, October 22nd, a standing committee of the House of Representatives, in compliance with Rule 9 of the Rules of the House of Representatives, reported that on that day it had presented to the President various enrolled bills and resolutions including House Resolution 3490, the one here in question. The President approved House Resolution 3490 by affixing his

signature thereto on November 2, 1951, the tenth day, Sundays excepted, after it had been physically delivered to him.

Clause 2 of the 7th Section of Article I of the Constitution provides:

"Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. * * * If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law."

The defendant Kapsalis, insisting that these amendments were not legally enacted, contends that under the above provision of the Constitution there could be no valid presentment by Congress to the President after the Congress had adjourned *sine die.* It is also contended that, since the resolution here in question was not presented to the President as required by the constitutional provision, it could at most only be considered as having been presented to him on the last day that Congress was in session and that the President's approval, by his signature on November 2, 1951, was, therefore, not within the tenth day, Sundays excepted, after it had been presented to him and therefore was not effective.

▮ We shall first consider the validity of a presentment to the President where, as here, the resolution was actually delivered to the President after the Congress had adjourned *sine die.* We agree that the first clause of this Constitutional provision can only contemplate a presentment by the Congress in some manner. The provision refers to "every bill which shall have passed the House of Representatives and the Senate * *." At that point the bill is necessarily in the hands of the Congress. But before presentment to the President the bill must be examined and authenticated as being a correct copy of the bill which passed both Houses by the presiding officers of both branches of the Congress. This examination and authentication is also in a sense Congressional action but not such action as requires participation by a quorum of the members of both Houses of the Congress. In the instant case the defendant says that the Congress by concurrent resolution authorized the presiding officers of both chambers to examine and sign enrolled bills after adjournment *sine die.* Surely no one would contend that such action could not be delegated by the Congress to the presiding officers of the two Houses and that the examination and authentication could not properly be done after the Congress had adjourned. It is true that such authentication of the bills is not prescribed by the Constitution but neither does this provision of the Constitution expressly provide how or when the bills, after they have been passed by both Houses, are to be presented to the President.

In the instant case the defendant says that on Monday, October 22, 1951, subsequent to the adjournment of Congress *sine die,* "a standing committee of the House of Representatives, the Committee on House Administration [see Rule XI (9), Rules of the House of Representatives, House Document No. 564], reported that on that day it had presented to the President various and sundry enrolled bills, including H. R. 3490 * * *." The defendant does not contend that such a presentment by the committee would be contrary to the constitutional provision except for the fact that the Congress had

adjourned *sine die* on the preceding Saturday. In other words, the defendant does not suggest that it was necessary for a quorum of both Houses to march in a body down to the White House to present the resolution to the President. Nor does the defendant object to the fact that in this case the resolution was presented only by a committee of the House instead of being presented by a joint committee representing both branches of the Congress.

We have left then only the narrow question of whether a regular committee of the Congress may, pursuant to the express direction or rule of Congress given or adopted during the session, as soon as practicable after a bill has been passed by both branches and has been duly examined and authenticated, present the bill to the President even though the Congress has adjourned *sine die* before the presentment. We think that a presentment under such conditions complies with the constitutional requirement.

The defendant argues that since this provision of the Constitution requires that the President may not return a bill to the Congress after it has adjourned, it follows that the Congress may not present a bill to the President after it has adjourned. The defendant says that the reason a vetoed bill may not be returned to Congress after an adjournment is that the Congress has then ceased to exist—that there is no Congress to which the bill can be returned. But this argument overlooks the fact that the reason for returning a vetoed bill to the Congress is to permit Congress to reconsider the bill together with the President's objections and to vote on the question of overriding the veto. This necessarily calls for true legislative action by a quorum of each House—action which is impossible after Congress has adjourned. But the fact that a bill to which the President has objected may not be returned to Congress after its adjournment does not solve the question of whether a committee of Congress may, on behalf of Congress, make a constitutional presentment to the President after the Congress has adjourned.

In support of his contention on this point the defendant cites the Pocket Veto Case, 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894, which held only that the President could not return a bill after the Congress had adjourned. In that opinion the Supreme Court pointed out that Congress, if not in session at the time a bill is returned by the President, could not take action on the bill which had been returned with the President's objections; and that such action necessarily required a quorum of both Houses in session.

The defendant also relies on In Re Opinion of the Justices, 76 N.H. 601, 81 A. 170. This was an opinion given by the Justices of the Supreme Court of New Hampshire to the Governor and Council relating to the validity of a certain act. The question there was whether an act which had not been correctly engrossed could be re-engrossed correctly and then presented to the Governor. From some of the language in that opinion it might be assumed that if called on to make a decision on the question that court might hold that a legislature in session is necessary to a valid presentment of a bill to the Governor.

There is some apparent conflict in the state court decisions on the question of presenting bills to the governor after adjournment of the legislature, but we find the following statement in 50 Am.Jur., Sec. 100, page 105:

"Effect of Adjournment—In the absence of any constitutional provision to the contrary, the adjournment of the legislature does not preclude the presentation to the chief executive of bills which have been passed by the legislature. Ordinarily, such bills must be presented forthwith. Some constitutions, however, contain certain provisions requiring a bill to be presented to the governor a designated number of days prior to the adjournment."

The Constitution of Illinois, Section 16 of Article V, S.H.A. provides that:

"Every bill passed by the General Assembly shall, before it becomes a law, be presented to the Governor.

If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it, with his objections, to the house in which it shall have originated * * *."

In People ex rel. Peterson v. Hughes, 372 Ill. 602, 25 N.E.2d 75, the Supreme Court of Illinois, after pointing out the reasons for the constitutional requirement that bills be presented to the governor and the rush of bills which are usually passed during the last hours of a legislative session, recognized the power of the general assembly to authorize the presentment of a bill to the governor after it had adjourned *sine die*.

In State v. Heston, W.Va., 71 S.E.2d 481, the court called attention to the fact that the constitution of that state required that every bill passed by the legislature be presented to the governor before it becomes a law but fixes no time within which the bill must be presented; and that the section does not provide that a bill shall be presented to the governor before the legislature adjourns. The court there said, 71 S.E.2d 492:

"The provisions of Article VII, Section 14, of the Constitution were not designed or intended to prevent the Governor from agreeing with the Legislature or to defeat an act passed by the Legislature and approved by the Governor. Though there appears to be no decision of this Court on the question of the time within which a bill, after it is passed must be presented to the Governor * * in some jurisdictions in which constitutional provisions substantially similar to those of Article VII, Section 14, of the Constitution of this State exist, it has been held that a bill passed by the Legislature may be presented to the Governor and signed by him after the Legislature has adjourned, (citing cases); * * *."

The Court of Appeals of Maryland in Lankford v. County Com'rs of Somerset County, 73 Md. 105, 20 A. 1017, 22 A. 412, 11 L.R.A. 491, and in Robey v.

Broersma, 181 Md. 325, 26 A.2d 820, 29 A.2d 827, 146 A.L.R. 687, expressly held that a bill could be presented to the governor after the legislature had adjourned. See also Dow v. Beidleman, 49 Ark. 325, 5 S.W. 297, 301, and State ex rel. Thompson v. Davis, 124 Fla. 592, 169 So. 199. In Hartness v. Black, 95 Vt. 190, 114 A. 44, 49, it was held that bills delivered by the clerk of the legislature to the governor after adjournment of the legislature, the delivery having been authorized by the legislature while it was in session, were properly presented. In that case, as here, the argument was made that if bills may be presented after adjournment of the legislature there is nothing to prevent delaying the presentment indefinitely. The Supreme Court of Vermont adequately answered that argument by saying, 114 A. at page 50: " * * public officers are bound to perform their duties with diligence and fidelity. That they may act otherwise cannot be assumed as a justification for denying them the right to act at all."

The defendant relies strongly on Preveslin v. Derby & Ansonia Developing Co., 112 Conn. 129, 151 A. 518, 521, 70 A.L.R. 1426, a case in which the court held that a subsequent legislature could not by an act validate as of the date of their passage acts passed by a prior legislature and approved by the governor where the former acts had not been presented to and approved by the governor as required by the constitution of that state and where there were intervening contractual rights which would be affected. However, in that opinion the court did indicate that presentation of bills might properly be made "forthwith following adjournment".

The defendant cites as a federal authority which has expressed an opinion on this subject, United States v. Weil, 29 Ct.Cl. 523, 548–549. The opinion so referred to consists of a dictum found in a concurring opinion of one of the judges in that case. However, in United States v. Taylor, D.C., 116 F.Supp. 439, 442, the United States District Court, District of

Minnesota, Fourth Division, held in a criminal case involving violation of the Boggs Act, the Act here in question, that the presentment of this Act to the President after the Congress had adjourned *sine die* was valid.

■ Since we hold that the resolution here in question was presented to the President pursuant to the requirements of the Constitution on October 22, 1951, the day it was physically delivered to him, and was approved by the President on Friday, November 2, 1951, his approval was "within ten days [Sundays excepted]" after the bill was presented to him as required by the Constitution. United States v. Taylor, 116 F.Supp. 439, 442.

■ The defendant Kapsalis also contends that even if the 1951 Amendments to the Act are valid and are in full force and effect the requirements of the statute for imposing increased penalties on him as a second or subsequent offender were not met and, therefore, the sentences against him were illegal. It is true that the 1951 Amendments did require the filing by the United States Attorney of an information setting out prior convictions of a defendant where the defendant was a second or subsequent offender, but the record in this case fails to show that Kapsalis was sentenced as a second or subsequent offender. He was sentenced for only ten years on each indictment, the sentences to run concurrently, which, of course, means that he was sentenced for a total of only ten years. Defendant's plea of guilty to each of the three indictments admitted his guilt as to each count in each of the three indictments.

The first of these indictments, No. 52–Cr.–512, contained two counts and charged the defendant, first, with having, on August 21, 1952, purchased heroin in violation of 26 U.S.C.A. § 2553(a) and, in the second count, with receiving, concealing and facilitating the disposition and concealment after importation of heroin, knowing it to have been imported into the United States contrary to law in violation of 21 U.S.C.A. § 174. The maximum penalty on each of these two violations for a first offender was five years, so the total sentence of ten years on this indictment was within the maximum penalty prescribed by law. In the second indictment, 52–Cr.–513, Kapsalis was charged in count one with unlawful purchase of heroin on June 21, 1952, in violation of 26 U.S.C.A. § 2553(a); in count two with an unlawful sale on the same date in violation of Title 26, § 2554(a); in count three with violation on the same date of Title 21, § 174; in count four with another unlawful purchase on June 21; in count five with an unlawful sale on the same date of the same amount as he was charged with buying in count four; in count six with a violation on the same date of 21 U.S.C.A. § 174; in count seven with a purchase on June 24 in violation of Section 2553(a) of 26 U.S.C.A.; in count eight with an illegal sale on June 24, 1952, of the same amount in violation of 26 U.S.C.A. § 2554(a); and in count nine with a violation on June 24 of 21 U.S.C.A. § 174. The third indictment, 52–Cr.–514, charged the defendant with having purchased heroin on June 20, 1952, in violation of Section 2553 of Title 26; in count two with the sale of heroin in violation of Section 2554(a) of Title 26; in count three with a violation of 21 U.S.C.A. § 174; and in count four with conspiracy to commit the substantive offenses alleged in counts one, two and three in violation of 18 U.S.C.A. § 371, the general conspiracy statute.

Thus the defendant by pleading guilty to each of the three indictments was accordingly found guilty of the commission of fifteen violations for each of which the applicable law prescribed a maximum penalty for a first offender of five years imprisonment—that is, a maximum sentence on the first indictment of ten years, on the second indictment of forty-five years and on the third indictment of twenty years, for a grand total or seventy-five years. The defendant is, therefore, certainly in no position to complain to this court of the three ten-year sentences which were to be served concur-

rently. The total number of years which the defendant was sentenced to serve was far less than the maximum permitted by the law. This court has no authority to modify a sentence where the sentence is within the limit allowed by the applicable statutes. United States v. Rosenberg, 2 Cir., 195 F.2d 583, 604.

Appeal No. 11051—United States v. Arthur Robinson.

The second appeal here involved is by Arthur Robinson from a judgment of the District Court denying, without a hearing, his motion to vacate and set aside the sentence which had been imposed upon him as a consequence of his plea of guilty to an indictment in six counts which charged him with unlawful purchase, sale and concealment of narcotics in violation of 26 U.S.C.A. §§ 2553(a) and 2554(a) and 21 U.S.C.A. § 174. The indictment charged six violations all occurring on the same day.

In this appeal the defendant Robinson makes the same contentions as to the invalidity of the Boggs Act as were made by the defendant Kapsalis in Appeal No. 11050—contentions which we found to be without merit for the reasons set out above.

The judgment sentencing Robinson to twenty years imprisonment recited that the United States Attorney had filed an information alleging that the defendant had prior to this indictment been convicted seven times of violations of the narcotic laws; that the defendant was present in person and by counsel; and that the "Court having inquired of the defendant whether he is the person who has been previously convicted as alleged in said information and the defendant, after being duly cautioned as to his rights, acknowledged in open court that he is such person * * *." On the day the defendant was sentenced, August 25, 1952, the United States Attorney stated to the trial court that defendant's counsel had been furnished a copy of the information and that counsel for the defendant and the defendant had been advised of the mandatory penalty provisions of the statute on the defendant's plea of guilty.

But counsel for the defendant Robinson now insists that the twenty year sentence given Robinson was illegal because after the information showing the prior conviction was filed, Robinson was not given "the opportunity in open court to affirm or deny that he is identical with the person previously convicted," as required by the statute. We think this contention cannot be sustained.

On the day Robinson was sentenced and while the prior convictions and the consequences involved were being discussed both Robinson and his attorney were in court. There was no denial by either of them that the information alleging the seven prior convictions had been previously served on them and that both counsel and defendant had been advised of the mandatory provisions of the statute because of the prior convictions. Nor was there any intimation by either Robinson or his counsel that Robinson was not the defendant in the seven prior narcotics convictions shown by the information. The Assistant United States Attorney pointed out to the court that Robinson had also been previously convicted of larceny, burglary and other state crimes and there was no denial by the defendant or his counsel as to these convictions.

The record in this case clearly shows that the charge of Robinson's prior narcotics convictions shown by the information filed in August 25, 1952, came as no surprise to either Robinson or his attorney. On July 16, 1952, when Robinson was arraigned he was present in person and by the same counsel who appeared with him on the day he was sentenced. The transcript of the proceedings on the day Robinson was arraigned shows that the United States Attorney then stated to the court that Robinson had a long criminal record including "seven prior federal narcotics violations." The transcript shows no objection to the statement by either Robinson or his attorney.

Ten days later, on July 25, 1952, when the case against Robinson was first called

up for disposition, the defendant's attorney in the presence of the defendant asked for a continuance, assigning as his reason, "I understand Mr. Robinson has seven prior convictions for narcotics * * *. Consequently the disposition in this case is a far more serious thing to Mr. Robinson than I thought it would be."

The defendant in this case was not a person unfamiliar with the courts nor was he afraid to speak out in his own behalf. When he heard the court announce his sentence of twenty years he immediately addressed the judge and asked him to be "more lenient than that."

Prior to the 1951 Amendments, the narcotics laws required that where an information showing prior conviction was filed the court should cause the defendant to appear before it and inform him of the allegations of the information and of his right to a trial by jury as to the truth thereof, and the law then expressly required that: "The court shall inquire of the defendant whether he is the person who has previously been convicted. If the defendant states he is not such person, or if he refuses to answer or remains silent, a plea of not guilty shall be entered by the court, and a jury shall be empaneled to determine whether the defendant is the person alleged in the information to have previously been convicted, and the number of such previous convictions."

These specific requirements were omitted from the law as it was amended in 1951 and instead of those specific requirements we now have only the requirement that the defendant "shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted." 26 U.S.C.A. § 2557(b) (1). The obvious intention of the Congress in so amending the law was to simplify the procedure in showing prior convictions and in sentencing defendants against whom multiple prior convictions are shown.

While it might be better practice and avoid attacks such as this on the judgment for the court or the United States

Attorney to expressly ask a defendant in a case where there have been prior convictions if the defendant is the same person, we think the record here clearly shows that Robinson had the opportunity to affirm or deny in open court that he was the same person against whom the prior convictions were shown. We think the record here shows that the defendant and his attorney by their words and actions in court acknowledged that Robinson was the defendant in the prior convictions which were alleged in the information.

We think the motions and the files and the record in each of these cases conclusively show that the prisoners Kapsalis and Robinson were entitled to no relief and their motions were, therefore, properly dismissed without a hearing.

Kenneth J. Burns, Jr., a member of the Chicago bar, was appointed to represent these two defendants in this court. He has ably presented the defendants' cases both in written briefs and in oral argument. We appreciate the valuable assistance he has rendered.

The judgment of the District Court in each case is

Affirmed.