**Randall SIMON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 1242-Misc.**

United States District Court
E. D. Louisiana,
New Orleans Division.
May 24, 1967.

Frank J. Varela, New Orleans, La., for plaintiff.

John C. Ciolino, Asst. U. S. Atty., New Orleans, La., for defendant.

BOYLE, District Judge:

In a two-count indictment, the § 2255 mover, Randall Simon, and one Ronald DeBose were jointly charged with violations of Title 26 U.S.C. §§ 4704(a) and 4705(a). On January 19, 1966, both entered pleas of guilty to the second count charging a violation of § 4705(a). On February 2, 1966, DeBose was sentenced to serve a five-year term. Simon, as a multiple narcotic violator, was sentenced to serve a ten-year term of imprisonment.[1]

---

1. No. 30112 of the Criminal Docket of this Court. The United States Attorney entered a nolle prosequi as to count one.

Simon, pro se, filed various documents.[2] The first, a letter dated March 13, 1966, and subsequent filings labeled "Motion to Correct an Illegal Sentence under Rule 35, Federal Rules of Criminal Procedure" and "Motion to Vacate Judgment," dated June 27, 1966, and November 1, 1966, respectively, urged various grounds for the relief sought and collectively were considered a Motion to Vacate the Sentence under Title 28 U.S.C. § 2255. Being of the opinion that Simon should have a hearing on his motion, we ordered his return from the United States Penitentiary in Atlanta, where he was serving his sentence. On January 11, 1967, he appeared before the Court at which time counsel was appointed to represent him in the § 2255 hearing held on April 25, 1967.

Although the various filings by Simon, pro se, urged numerous grounds as a basis for his petition, the issues were narrowed when his court-appointed counsel filed a supplemental motion alleging (1) mover did not voluntarily and with understanding plead guilty, (2) the sentencing Judge[3] accepted mover's plea of guilty without first addressing mover personally and determining whether his plea was made voluntarily and with understanding, (3) the nature of the charges and the consequences of his plea in relation to the sentence he could receive were never explained to mover by anyone, (4) mover was induced to plead guilty on the promise of his counsel, after consultation with the United States Attorney, that he would not be sentenced to a term greater than five years, (5) mover was never arraigned on the second offender information and no legal basis existed on which to sentence mover as a second offender.[4]

In support of his motion, mover himself testified and offered the testimony of G. Wray Gill, Esq., the court-appointed attorney who represented him in the criminal action. Mr. Gill, a member of the New Orleans Bar, known to the Court to be a competent practitioner with more than thirty years of experience in the practice of criminal law in State and Federal Courts, testified that he had known Simon and had represented him in other matters previous to his appointment in the case in which the sentence under attack was imposed; that from other sources, as well as from Simon, he was familiar with the facts in the case;[5] and that he advised him to enter the plea of guilty on which that sentence was imposed. He further testified that he had conferred with Simon in the Marshal's office or in the courtroom on October 27, 1965, the date on which he was appointed by the Court, and again on January 19, 1966 at the Parish Prison in New Orleans, where petitioner was then incarcerated, prior to the entry of Simon's plea of guilty on January 19, 1966. On the latter occasion counsel testified that because Simon was a second offender and he, counsel, was aware that the United States Attorney would file a multiple offender information, he advised Simon that the minimum sentence that could be imposed would be ten years.

He further testified that on the day of sentencing, February 2, 1966, when he appeared in Court, Simon called him over and asked if it would be possible to have the sentence which he was about to receive reduced below ten years. Mr. Gill testified he informed Simon at that time that it was not.

Simon, testifying in his behalf, stated that he was represented by Mr. Gill and

---

2. Simon also filed a document, dated June 13, 1966, labeled "Motion for Extension of Time for Refiling of Original Action."

3. The sentencing Judge was elevated to the Court of Appeals, Fifth Circuit, in September 1966.

4. Although the supplemental motion states that the grounds alleged therein "are in addition to those alleged by mover in his original motions," at the hearing held on April 25, 1967, counsel for petitioner stated that the issues before the Court were limited to those specifically set forth in the supplemental motion.

5. Mr. Gill was also retained counsel for Simon's co-defendant.

that he spoke with Mr. Gill on October 27, 1965, the date on which Gill was appointed to represent him, in the courtroom. Simon testified that he had surrendered himself to the Marshal on October 26, 1965, and because he was an addict and was anxious to go to the hospital, wanted to plead guilty as soon as possible. However, although his arraignment was set for October 27, 1965, it was continued to November 3, 1965, apparently because Simon was suffering some distress as a result of withdrawal of narcotics. On November 3, 1965, Simon again appeared in Court for arraignment and through his counsel entered a plea of not guilty.

Simon said he did not again speak with Gill until January 19, 1966, at the Parish Prison before his appearance in Court on that day. His version of what occurred was quite different from that of his attorney. Simon stated that Mr. Gill advised him to enter a plea of guilty on one count of the indictment and that he, Simon, consented to do so provided he got only a five-year sentence. Simon testified that on his stating such condition, Mr. Gill said he would talk with the Assistant United States Attorney and that he believed he could work it out so that the sentence would be five years. Simon claimed that at no time did Mr. Gill discuss with him his being sentenced as a second offender.

Simon further testified that when in Court on January 19, 1966, Mr. Gill had come over to the jury box in which he was seated, awaiting calling of his case, and at that time Mr. Gill informed him that he had spoken to the Assistant United States Attorney and that he could plead on count two of the indictment and would get five years. It is to be noted that Mr. Gill's testimony shows that he conferred with Simon at the jury box not on January 19th but on February 2, 1966, on which occasion Simon inquired whether it would be possible for him to receive a sentence of less than ten years, to which inquiry Gill responded negatively.

Then Simon testified that when his case was called on January 19, 1966, and at the time that the Court called upon the Assistant United States Attorney to state the possible penalties to the defendants, and on hearing the Assistant United States Attorney stating that the possible penalty as to "Simon as a multiple offender, the minimum penalty is ten years and a maximum of forty years," [6] he turned to Mr. Gill and told him that if he was sentenced as a second offender, he would not be able to get probation or parole. Thereupon Simon claimed that Gill informed him that the Assistant United States Attorney was only reading the penalties and that if he got ten years, he, Gill, would get him out on parole. Gill testified that no such conversation occurred between Simon and him at the time of the entry of the plea of guilty on January 19, 1966.

Simon further testified that at the time of the plea he understood the nature of the charge. Further evidence of this fact is found in his statement to the Court at the time of sentence.[7]

Simon's claim that his plea was not voluntarily entered with understanding of its consequences is based on the contentions that: 1) the Court did not address him personally to determine the voluntariness of his plea and his understanding of its consequences; 2) the plea was induced by the promise of his counsel that he would receive a five-year sentence; and 3) he was not advised of his ineligibility for probation or parole.

---

6. See Page 3 of the Transcript of Proceedings on January 19, 1966.

7. In response to the sentencing Judge's question: "Randell, do you have anything to say before sentence is imposed?" Simon answered: "I would like to say that when this all came up, I was not a dope peddler; I was only an ad-

dict, and I was doing another addict a favor by going through with it." Transcript, p. 7, February 2, 1966. "Going through with it" is an obvious reference to the sale of narcotics to a Narcotic Agent and an informer which was the basis of the indictment. See testimony of the Narcotic Agent, Transcript, pp. 4 & 5, January 19, 1966.

██ 1. In determining whether a plea of guilty is made voluntarily and understandingly, it is settled in the Fifth Circuit that "the Court does not have to follow any prescribed formula or that any specific finding of such facts must be entered in the record." Hulsey v. United States, 369 F.2d 284 (5th Cir., 1966); Rimanich v. United States, 357 F.2d 537 (5th Cir., 1966); Kennedy v. United States, 249 F.2d 257 (5th Cir., 1957); Shelton v. United States, 246 F.2d 571 (5th Cir., 1957). It is sufficient if, on the whole record, it is established that the plea was so made. Brokaw v. United States, 368 F.2d 508 (4th Cir., 1966) and cases cited therein.[8] Any apparent deficiencies in a determination of voluntariness and understanding at the arraignment can be supplied at hearing on motion under Section 2255. Brokaw v. United States, supra; Weed v. United States, 360 F.2d 568 (5th Cir., 1966); Laughner v. United States, 373 F.2d 326 (5th Cir., 1967); Arnold v. United States, 359 F.2d 425 (3rd Cir., 1966); Townes v. United States, 371 F.2d 930 (4th Cir., 1966); France v. United States, 358 F.2d 946 (10th Cir., 1966), cert. den. 385 U.S. 872, 87 S.Ct. 145, 17 L.Ed.2d 100 (1966); McDonald v. United States, 356 F.2d 980 (10th Cir., 1966), cert. den. 385 U.S. 936, 87 S.Ct. 298, 17 L.Ed.2d 216 (1966); Brokaw v. United States, supra; cf. Heiden v. United States, 353 F.2d 53 (9th Cir., 1965). Where Rule 11 has not been strictly complied with on arraignment, but the plea was, in fact, voluntarily and understandingly made, the § 2255 mover has been held not to have been prejudiced by the noncompliance. Domenica v. United States, 292 F.2d 483 (1st Cir., 1961); Lane v. United States, 373 F.2d 570 (5th Cir., 1967).

██ Here, at the time of the change of his plea on count two from not guilty to guilty, following the statement by the Assistant United States Attorney of possible penalties, the Court inquired whether or not Simon and his co-defendant understood the statement of the penalties. The transcript shows that both defendants answered, "Yes, sir." [9] Immediately following, the Court questioned the defendants as to whether or not they understood that their attorney was entering a plea of guilty in their behalf and whether entering such a plea was what they wanted to do, and again the transcript reflects that both defendants answered, "Yes, sir." [10]

Furthermore, as noted above, Simon, at the § 2255 hearing, testified he was anxious to plead guilty as soon as possible after he had surrendered himself.

██ 2. It is impossible for us to credit Simon's testimony that his plea was made on the condition that he would get only a five-year sentence. On two occasions [11] he had heard from the Court and the United States Attorney explanations that in his case the mandatory minimum sentence of ten years was applicable. We cannot believe that an attorney of Mr. Gill's competence and extensive experience could have told or did tell Simon that he would get five years, first, because Mr. Gill, knowing that Simon was a second offender, having represented him in the 1949 case, the conviction in which was the basis of the multiple offender information, is too knowledgeable an attorney not to have known of the provisions of Section 7237, Title 26 U.S.C., and secondly, Gill's testimony, which we accept, was that he specifically informed Simon, prior to his plea, that because he was a second offender the minimum sentence that he could receive was ten years. Furthermore, the matter of his liability for at least the minimum sentence was probably otherwise within Simon's knowledge,

8. See Quibell v. United States, 265 F.Supp. 474 (S.D.Cal., 1966), decided prior to Brokaw, but reported subsequently, following Heiden, supra.

9. Transcript, p. 3, Proceedings on January 19, 1966.

10. Transcript, p. 7, Proceedings on February 2, 1966.

11. Transcript, p. 3, Proceedings on January 19, 1966; Transcript, p. 7, Proceedings on February 2, 1966.

in view of his testimony that prior to his plea of guilty he was aware that as a second offender narcotic violator he could not be paroled or receive a probationary or suspended sentence.

Simon also testified that neither on January 19, 1966, nor February 2, 1966, nor between said dates, did he make any complaint to the Court or anyone else that his plea of guilty was entered on the belief that his sentence would only be five years.

When the Court, on the § 2255 hearing, asked Simon why, if it were a fact that he had consented to enter a plea of guilty only on the condition that his sentence would be five years, on January 19, 1966 and again on February 2, 1966, when the sentencing Judge informed him that because he was a second offender the minimum sentence that could be imposed was ten years, he did not protest, he stated that his attorney would not let him talk. Observing Simon on the stand and the manner in which he testified, we find his answer to be unworthy of acceptance. Even if his attorney did so, which we do not believe, Simon gave no appearance of lacking Court presence himself. Moreover, we believe the alert and distinguished sentencing Judge would have certainly been aware that something was amiss and would have then investigated the matter before proceeding.

3. Proceeding to Simon's contention that his plea was not entered voluntarily with understanding of its consequences because no one explained to him that, as a second offender, he was ineligible for probation or parole, we find the record in the criminal case shows that neither the sentencing Judge nor the Assistant United States Attorney informed Simon of such ineligibility. In the § 2255 hearing, his former counsel testified that because he knew Simon, being a second offender, could not get a suspended sentence, he did not discuss such possibility or the possibility of parole with Simon.

However, as previously noted, Simon, in his § 2255 testimony, stated that at the time of his plea, he knew, from having been in Court when cases of other multiple narcotic offenders had been handled, that if he was sentenced as a second offender, he could not get probation or parole. Notwithstanding such knowledge, his § 2255 complaint is that neither his counsel, the Assistant United States Attorney, the Court, nor anyone else, in his case, explained that fact to him.

His § 2255 counsel, relying on Munich v. United States, 337 F.2d 356 (9th Cir., 1964) and Heiden v. United States, 353 F.2d 53 (9th Cir., 1965), urges that Rule 11, Federal Rules of Criminal Procedure, makes it the mandatory duty of the Court not to accept a defendant's plea of guilty until the Court ascertains the voluntariness of the plea and the defendant's understanding of its consequences. Despite Simon's admitted knowledge, gained as aforesaid, of his ineligibility for probation or parole, counsel maintains that the Court's failure to discharge that duty in and of itself requires that the conviction and sentence be vacated.

Although the amendment to Rule 11 was adopted and became effective subsequent to Simon's plea and sentence, the Rule, as amended, reflects the law as found in many cases decided prior to the amendment.[12]

We have not been cited, and our research has failed to disclose, any reported decisions involving this issue raised by mover since the Rule amendment.

In *Munich,* supra, relied on by mover, the defendant, with retained counsel, pleaded guilty to a narcotics violation. In a § 2255 proceeding, the Court ordered his sentence as a second offender vacated. There the Court held that one of the "consequences" of being convicted of a narcotics violation "is that the imposition or execution of the sentence imposed shall not be suspended, probation shall not be granted, and parole is not available." Finding that no one had ever told Munich

---

12. See Notes of Advisory Committee on Rules.

18 U.S.C. Rule 11, Federal Rules of Criminal Procedure.

he would not be eligible for probation and his counsel having testified he had not advised Munich that there was no possibility of probation or parole, the Court said:

> "In our opinion one who, at the time of entering a plea of guilty, is not aware of the fact that he will not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea."

In *Heiden,* supra, the Ninth Circuit expressly overruled its holdings in *Munich* and Long v. United States, 290 F.2d 606 (9th Cir., 1961) relied on in *Munich,* that findings of voluntariness of the plea and the defendant's understanding may be made in a subsequent § 2255 proceeding. *Heiden* went on to find Rule 11 mandatory and held that the determination required to be made by the Court must be made at the time of arraignment.

Though expressing no opinion, the Fifth Circuit in *Rimanich,* supra, characterized as a "novel doctrine" *Heiden's* holding that the failure to comply with Rule 11 would, in and of itself, require setting aside the plea and sentence.[13]

The Fourth Circuit in Brokaw v. United States, supra, declined to follow the Heiden rule and observed that it has not been adopted in any other circuit. *Brokaw* points out further that notwithstanding *Heiden,* other circuits, including the Fifth, follow the rule that deficiencies in a determination of understanding and voluntariness can be supplied at hearing on a § 2255 motion, citing *Weed* (5th Cir.), supra, *Arnold* (3rd Cir.), supra, and *France* and *McDonald* (10th Cir.), supra, to which rule we subscribe in the circumstances of this case.

Contra to *Munich,* Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (D.C., 1963), cert. den. 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964), held that eligibility for probation or parole is not a "consequence" of a plea of guilty in Section 4705(a) cases. Simon pleaded guilty to a § 4705(a) violation and unlike Munich, Simon, as already pointed out, prior to his plea, was aware that probation or parole was not available to him.

Citing *Smith,* supra, approvingly, the Fifth Circuit in Trujillo v. United States, 377 F.2d 266 (1967) held that it was not necessary that the Court inform Trujillo, who was convicted on his plea of guilty to a charge of unlawful sale of marijuana, that he was ineligible for parole. Section 7237(c), Title 26 U.S.C. made both Simon, in this case, and Trujillo ineligible for parole.

■■ What Judge Wilbur K. Miller said in *Smith,* supra, we find quite apropos here and, but for changing the name of Smith to Simon, expresses our views most adequately.

> "Had probation been available, appellant could hardly have expected it would have been granted, for a defendant with a bad record who pleads guilty to two charges of trafficking in narcotics is not apt to be granted probation by any district judge.[14] So, Smith's complaint of manifest injustice because he now says he did not know probation was unavailable is, in the circumstances, rather fatuous.
>
> "It will not be suggested by anybody that, before accepting a plea of guilty to an offense with respect to which parole is a possibility, the judge must determine whether the defendant understands the nature of parole, his eligibility therefor, and the circumstances in which it may thereafter be granted. The reason is, of course, that eligibility for parole is not a 'con-

---

13.  357 F.2d 537, 538, footnote 1.

14.  In addition to the Federal narcotics conviction of 1949 in No. 23316 of the Criminal Docket of this Court, Simon had a State (Louisiana) conviction for possession of narcotics in 1959. See Transcript, p. 6, Proceedings on February 2, 1966. Also, it appears from the Transcript, p. 6, Proceedings on February 2, 1966, that Simon was convicted of theft of U. S. mail and forgery of a U. S. Treasury check in 1956. The record in No. 25942 of the Criminal Docket of this Court shows that a Randall Joseph Simon, Jr., was sentenced on July 11, 1956 on a plea of guilty to those two charges.

sequence' of a plea of guilty, but a matter of legislative grace. It is equally true that non-eligibility for parole is not a 'consequence' of a plea of guilty in § 4705(a) cases, even under the judicial expansion of Criminal Rule 11; rather, it is a consequence of the withholding of legislative grace."

Probation and parole are matters of legislative grace. Lathem v. United States, 259 F.2d 393 (5th Cir., 1958). No accused is entitled to either of right. Whether the privilege of probation will be granted is discretionary with the Court and whether the privilege of parole is to be granted is left to the discretion of the Parole Board.

We prefer the views of *Smith,* supra, and *Trujillo,* supra, rather than that of *Munich,* supra, in the matter of availability of probation and parole being a "consequence" of Simon's plea. But even if we were to hold that unavailability of probation and parole is a "consequence" of a narcotic offender's plea of guilty, otherwise voluntarily and understandingly entered, as we find Simon's was, the record establishes that he was aware of that "consequence" prior to and at the time of his plea.

From the records in the criminal action and the § 2255 proceeding, and considering the background, experience, conduct, the information received by Simon from all sources, and his personal knowledge, we find that his plea was entered voluntarily with understanding of the nature of the charge and the consequences of the plea. United States v. Kniess, 264 F.2d 353 (7th Cir., 1959); Bartlett v. United States, 354 F.2d 745 (8th Cir., 1966), cert. den. 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542; Brokaw v. United States, supra; Weed v. United States, supra.

There remain Simon's contentions that his sentence should be vacated because he was not arraigned as a second offender and no legal basis existed for his being so sentenced.

Section 7237(c) (2), Title 26 U.S.C., provides that after conviction, but before sentence, the United States Attorney shall advise the Court whether the conviction is the offender's first or a subsequent offense. If the latter, an information setting forth prior convictions shall be filed and the "offender shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted." If denied, the issue of identity shall be presented to a jury. If found, or by the offender it is acknowledged, that he is such a person, he shall be sentenced as a multiple offender. Section 7237(d) provides that the imposition or execution of the multiple offender penalty shall not be suspended, probation shall not be granted and the offender shall not be entitled to the benefit of the law relative to parole.

Simon contends that he was never arraigned on the second offender information and was not given the opportunity to admit or deny that he was the identical person previously convicted as alleged in the information.

In the § 2255 hearing, Simon testified that he was not aware that a multiple offender information had been filed while he was in Court on January 19, 1966 when he entered his plea of guilty. We do not read the statute as requiring that the information be filed in the presence of the offender. In this case, although the transcript of the proceedings on January 19, 1966 does not reflect the filing of the second offender information, the Clerk's Minute Entry of the proceedings on January 19, 1966 shows that "with leave of Court, the United States files information as to defendant, Randell Simon, as a second offender." [15] Simon, in the § 2255 hearing, testified that when he returned to the Parish Prison after his appearance

15. The second offender information bears the Clerk's filing stamp showing filing thereof on January 19, 1966. See record in No. 30112 Criminal, Eastern District of Louisiana.

in Court on January 19, 1966, he received a letter from the United States Attorney with a copy of the multiple offender information and that he had read the information.

It is clear that the information was filed and Simon had a copy of it and had read it prior to his sentencing on February 2, 1966.

In open Court on two occasions, January 19, 1966 and February 2, 1966, Simon was made aware of the fact that on conviction he would be subject to be sentenced as a second offender. On neither occasion did he deny the allegation that he was a second offender. The transcript of the proceedings on January 19, 1966 shows the following:

"THE COURT: Would you state the possible penalties to the defendants, Mr. Morial?

"MR. MORIAL:

Yes, sir. As to DeBose, the penalty is five to 20 years or $20,000, or both. As to Simon, the minimum penalty is five years, on this charge, and as to Simon as a multiple offender, the minimum penalty is 10 years, and a maximum of 40 years.

"THE COURT: Do you both understand that?

A Yes, sir (by both defendants)."

and on February 2, 1966, the following:

"BY THE COURT:

Q Randell, do you have anything to say before sentence is imposed?

A Yes, sir.

Q All right.

A I would like to say that when this all came up, I was not a dope peddler; I was only an addict, and I was doing another addict a favor by going through with it.

Q All right; anything else?

A No, sir.

Q You realize that the lowest I can give you is 10 years, don't you?

You are a second offender. Mr. Gill has told you that, I know, and you have been so informed here in court.

"MR. GILL: That's true, sir.

"BY THE COURT:

Q I am giving you the minimum. I can't give you anything else. I appreciate what you have told me, but I can't help it. I can't give you one minute less than 10 years.

\* \* \* \* \* \*

"THE COURT: It is the judgment of this Court that the defendant Randell Simon be sentenced to the custody of the Attorney General for imprisonment in such place as he may designate, on count 2, the defendant. Randell Simon having been previously convicted on a narcotics charge in 1959,[16] this being his second offense, for a period of 10 years, which means he is being sentenced for being a second offender."

While it is true that an attack such as is made by Simon would be avoided if the defendant is expressly asked whether he is the same person alleged in the information to have been previously convicted, under the facts in this case, Simon's attack cannot succeed. United States v. Scales, 249 F.2d 368 (7th Cir., 1957), cert. den. 356 U.S. 945, 78 S.Ct. 792, 2 L.Ed.2d 820; United States v. Kapsalis, 214 F.2d 677 (7th Cir., 1954). See also Smith v. Erickson, 331 F.2d 49 (8th Cir., 1964) and Aeby v. United States, 255 F.2d 847 (5th Cir., 1958).

Both Simon and his attorney were fully aware of what was transpiring in Court. Simon had been advised by his counsel, prior to his plea, that he would be proceeded against and sentenced as a second offender. He had ample opportunity, as well as the obligation, on either of the two occasions, when the fact that he was a second offender and could be and was being sentenced as such was brought into focus, to inform the Court that the allegations of his prior conviction were un-

16. Simon's prior Federal narcotics conviction was in 1949.

true.[17]  Simon, in the § 2255 hearing, testified he did not deny his alleged previous conviction on his January 19 or February 2, 1966 appearances before the Court.  Indeed, the record shows he could not validly do so.

Simon's § 2255 Motion is without merit and is, therefore, denied.

17. The record in No. 23316 of the Criminal Docket of this Court shows that Simon, appearing personally and by counsel, Mr. G. Wray Gill, on August 17, 1949, was sentenced to serve twenty-one (21) months on his plea of guilty to a violation of the Marihuana Tax Act of 1937.